IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EL NUEVO DIA, INC. ) | |
| ) | |
|    Plaintiff ) | |
| ) | |
| VS. ) | CIVIL ACTION NO. CV 98-1546 (JP) |
| ) | |
| UNITED STEELWORKERS OF ) | |
| AMERICA, AFL-CIO-CLC, ) | |
| ) | |
|    Defendant. ) | |

**USWA'S MEMORANDUM OF LAW OPPOSING EL NUEVO DIA'S
PETITION TO VACATE ARBITRATION AWARD AND
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

      The United Steelworkers of America, AFL-CIO-CLC respectfully moves the Court for an order denying El Nuevo Dia's Petition to Vacate the Arbitration Award and granting judgment as a matter of law with respect to its counter-claim seeking enforcement of the award.  The facts in this case are not in dispute.  The only issue is whether the arbitrator exceeded his authority when he reduced a termination to a 90 day suspension and ordered the Company to reinstate the grievant with back pay.  The following factual summary is taken from the arbitration award.

**Summary of Undisputed Facts**

      The USWA and El Nuevo Dia were parties to a binding collective bargaining agreement during the relevant time period. (Union Ex. 1).  The collective bargaining agreement (hereinafter CBA) contains a grievance and arbitration provision.  Article XVI of the CBA sets forth a three step procedure for handling "disputes that may arise when it be understood that this Agreement has been violated by either of the parties or that discrimination was committed by either of the parties." (Union Ex. 1, p. 27, § A).

The third step calls for the submission of the dispute to arbitration and the selection of an impartial arbitrator. *Id*. The agreement provides that the Arbitrator's "decision shall be according to law and be final and binding for both parties. The Arbitrator shall not have jurisdiction to alter, amend or modify the provisions of this Agreement." (Union Ex. 1, p. 28, § D). The agreement further states that "in the case of dismissal that the Arbitrator determines to have been unjustified, the Arbitrator shall order the re-hiring of the affected employee and the payment of the salary he or she failed to receive." (Union Ex. 1, p. 29, § G). Finally, the CBA contains a provision requiring the employer to provide copies of previous disciplinary notices related to the action. (Union Ex. 1, p. 29 § J. 1).

On December 5, 1996, the Company terminated Mr. Laracuente's employment. (Union Ex. 2, Arbitration Award, p. 10). The Company claimed that Mr. Laracuente had abandoned his job when he failed to show up at work on Saturday November 16, 1996 and then reported on November 21, 1996. *Id*. at p. 4. Mr. Laracuente testified that he only missed two and half days because he was not scheduled to work November 17-19 and that he showed up to work in the afternoon of November 21. *Id*. at p. 7.

Mr. Laracuente testified that he was absent because he needed to travel to Florida on short notice and that if he did not show up at a closing he would lose money he had deposited. (Union Ex. 2, p. 12). There was conflicting testimony about whether Mr. Laracuente had permission to miss work on the days in question. *Id*. at 11. There is no dispute that Mr. Laracuente was in Florida during the days he missed from work and that he had dealings at a Real Estate office. *Id*. at 12.[1]

---

[1] The Arbitrator specifically found that "Laracuente always told the truth as to the reason which, in his judgment, justified hi absence." *Id*. at 12.

2

At the hearing, the Company maintained that Laracuente did not produce evidence of his presence in Florida during the time period allotted. The Company, however, introduced an exhibit that showed that Laracuente was in Florida and that his presence was "really important and essential." (Union Ex. 2, p. 12). Moreover, the Company relied on prior discipline to justify Laracuente's termination for missing work without permission. *Id*. at p. 13. Indeed, it presented evidence of Laracuente disciplinary history in order to justify dismissal as the appropriate sanction. *Id*.

The hearing officer concluded that Laracuente should have called back after learning that he could not fax documents or travel on another day. (Union Ex. 2, p. 11). Because there was no disagreement that if alternatives were not available, Laracuente was to call his supervisor back, the arbitrator found that Laracuente did not have authorization to miss work on the days at issue. *Id*. The Arbitrator, however, concluded that dismissal was not justified under circumstances. *Id*. at 12.

First, the Arbitrator noted that Mr. Laracuente approached his supervisors prior to missing work and notified them of the emergency need for leave. The Arbitrator found that Mr. Laracuente was truthful during the entire process and did not attempt to conceal or fabricate an explanation. Mr. Laracuente's truthfulness was verified by the Company when it received a letter from the real estate company involved in the transaction. *Id*. at p. 12.

Second, the Arbitrator found that the Company's claim that Laracuente's absence "caused a loss of 500-some-odd dollars" had no evidentiary support. *Id*. at p. 13. Additionally, the Arbitrator credited Laracuente's testimony that on November 15 (the day before his absence) he met with his supervisor and "gave him a report so that the work could be performed during his absence." *Id*.

3

Finally, the Arbitrator acknowledged that Laracuente had received prior discipline in August 1995 and December 1995 involving differences with supervisors and not being at work. *Id*. The Arbitrator also noted that Laracuente had received certificates for "being part of the most outstanding region," in July and September 1993 and March and July 1995. *Id*. The evidence also showed that September 1996 (a few months before his dismissal), Laracuente was commended for his efforts during the emergency of hurricane Hortense. *Id.* at p. 14.

Based on the facts surrounding the absences and the mixed record of job performance, the Arbitrator concluded that dismissal was not justified. *Id.* at p. 14. He reduced the dismissal to a 90 day suspension and ordered reinstatement plus an appropriate amount of back pay. *Id.* at 17. The Company conditionally reinstated Mr. Laracuente after receiving the Arbitrator's award. (*See*, Doc. 11, § II Uncontested Fact, No. 11). The Company, however, has not compensated Mr. Laracuente as required under the award.

## Argument

The only issue in this case is whether the Arbitrator exceeded his authority when he determined that the Company lacked just cause to terminate Laracuente's employment. Because, *inter alia*, the CBA (1) empowers the Arbitrator to decide whether a dismissal is justified, (2) contains no language expressly defining the term "justification," (3) does not enumerate the penalties for specific offenses or limit the remedies an arbitrator may award, and (4) clearly states that arbitration is final and binding, the Court should deny the petition to vacate and grant the USWA's motion for summary judgment.

1. **Standard of review applicable to labor arbitration awards.**

It is well settled law that judicial review of arbitral awards is "extremely narrow and exceedingly deferential*.*" *Keebler Company v. Truck Driver's Local 170*, 247 F. 3d 8, 10 (1st

Cir. 2001); *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330 (1st Cir.2000) (quoting *Wheelabrator Envirotech Operating Servs. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43 (1st Cir.1996)); *Maine Cent. R.R. v. Bhd. Of Maintenance of Way Employees*, 873 F. 2d 425, 428 (1st Cir. 1989)(observing that "[j]udicial review of an arbitration award is among the narrowest known in the law."). As the First Circuit recently noted, "disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir.2000). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Indeed, when labor and management have agreed to arbitration as the final and binding method for settling grievances, "the arbitration award is normally non-reviewable." *In Re Hotel Da Vinci*, 797 F. 2d 33, 34 (1st Cir. 1986); *Union de Trajabadores v. Caribbean Gulf Refining*, 680 F. Supp. 469, 470 (D. Puerto Rico 1988).

In *El Dorado Technical Servs., Inc. v. Union General De Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir.1992) the Panel described the standard of review in the following manner:

> In labor arbitration, matters of contract interpretation are typically for the arbitrator, not for a reviewing court. While the arbitrator's award must draw its essence from the collective bargaining agreement, it need not mirror a judge's notion of how the agreement's language might best be interpreted or might most fairly be applied to a given set of facts. So long as the arbitrator, acting within the scope of his delegated authority, is arguably construing the contract, his decision must stand. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica, Local 610*, 959 F.2d 2, 3-4 (1st Cir.1992*); Georgia-Pacific Corp. v. Local 27, Etc.*, 864 F.2d 940, 944 (1st Cir.1988).

>Put succinctly, then, a court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation. *See Berklee College of Music v. Berklee Chapter of Mass. Federation of Teachers, Local 4412*, 858 F.2d 31, 32-34 (1st Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). After all, "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitral] awards." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

Additionally, in reviewing a labor arbitration award the Court should accept the arbitrator's findings. *Boston Medical Center v. SEIU, Local* 285, 260 F. 3d 16, 18 (1st Cir. 2001). Such deference is consistent with the strong federal policy favoring arbitration of labor disputes.[2]

### 2. The collective bargaining agreement does not contain a definition of "just cause" or justification and thus the Court should defer to the Arbitrator's decision that there was no just cause for termination and enforce the parties' agreement that arbitration is final and binding.

When the collective bargaining agreement omits a definition of the term just cause, it is within the arbitrator's authority to interpret the phrase as applied to a specific instance of discipline and the reviewing court must defer to that interpretation. *See, Weber Aircraft v. General Warehousemen and Helpers, Local 767*, 253 F. 3d 821 (5th Cir. 2001)(holding that arbitrator did not exceed authority when he modified a termination to an 11 month suspension, even though the contract stated that "sexual harassment" was grounds for termination.); *Trailmobile Trailers v. Int'l Union of Electronic, Electrical, Salaried and Furniture Workers*, 223 F. 3d 744 (8th Cir. 2000)(noting that when the contract does not define the term "just cause" and does specify the punishment for offenses, the arbitrator's interpretation of the phrase should be deferred to); *see also IMC-Agrico v. UFCW*, 171 F.3d 1322, 1328 (11th Cir. 1999)(observing that when an agreement does not define just cause and does not include an explicit provision for

---

[2] For additional cases discussing the standard of review, see Doc. 11, pp. 9-16.

offenses that will lead to termination, a reviewing court must defer to an arbitrator's interpretation of the just cause provisions); *See also, First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 896-97 (2d Cir.1997).

In the case at bar, there can be no dispute that the CBA authorizes the arbitrator to determine whether a dismissal is justified. (*See*, Union Ex. 1, p. 29 § G). Indeed, the contract empowers the arbitrator to award back pay and reinstatement if he or she finds a dismissal is unjustified. *Id.* Additionally, there can be no dispute that the CBA does not define or otherwise specify what constitutes justification for dismissal. By leaving these terms undefined, the parties have agreed to accept an arbitrator's interpretation. The lack of specificity in this regards means that the parties envision that the arbitrator will "bring his informed judgment to bear in order to reach a fair resolution" of a dispute; "**this is especially true when it comes to formulating remedies.**" *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960).

As evidenced in the award, the Arbitrator carefully considered the evidence presented and discussed relevant arbitral principles when fashioning the appropriate remedy. He noted that he must "determine, in light of the evidence presented and the collective bargaining agreement, whether or not grievant's termination was justified." (Union's Ex. 1, p. 9). Based on his judgment of the totality of grievant's record, the Arbitrator concluded that prior admonishments did not "tip the scale such that would justify termination." *Id*. at 14.

In other words, consistent with the mandate in Article XVI, § G, he concluded that the dismissal was not justified. Instead, the Arbitrator reasoned that the appropriate discipline for Mr. Laracuente's conduct was a 90 working day suspension without pay. There is nothing in the

CBA that precludes this result. Accordingly, the Court should defer to the Arbitrator's judgment and enforce the award in its entirety. Such an order will give effect to the CBA's provision stating that the Arbitrator's decision is "final and binding for both parties." (Union's Ex. 1, p. 28 § D).

> **3. The Company's arguments asks the Court to substitute its judgment on the merits of this case for the judgment of the Arbitrator. The Company can point to no specific contract language that expressly precludes the Arbitrator's resolution of this matter.**

The Company advances two interrelated arguments in support of vacating the award. First, the Company claims that the CBA requires that the award be "according to law" and that the award is not according to law. Second, the Company argues that the arbitrator dispensed his own brand of industrial justice when he substituted his judgment for the Company's judgment. Both these arguments lack merit.

> **(a) The Company points to no law that the Arbitrator's award violates and thus it is according to law.**

Recognizing that it must show how the arbitrator's award is inconsistent with the express terms of the contract, the Company argues that the award must be in accordance with law. Article XVI § D provides that "[t]he Arbitrator's decision shall be according to law and be final and binding for both parties."[3] The Company relies on this provision to argue that the award does not draw its essence from the agreement because it is not according to law.

The problem with this argument is two-fold. First, the Company assumes that "according to law" means consistent with other similar decisions. A reasonable interpretation of the phrase "according to law" ("conforme a derecho") is that the award cannot violate positive law. This is not a surprising proposition because an Arbitrator cannot order the parties to violate the law.

---

[3] The actual contract states in relevant part the following: "La decision del arbitro sera conforme a derecho y sera final y obligatoria para ambas partes." Conforme a derecho is translated as "according to law" but can also read "in accordance with law."

8

Such a decision may likely violate the narrow public policy exception. *See*, *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57 (2000)(holding that an arbitration award reinstating a truck driver who failed two drug tests to his former driving position did not violate Department of Transportation regulations and was not contrary to public policy).

The decision to reinstate Mr. Laracuente to his former position with appropriate back pay does not violate any known law. The Company does not argue (and cannot reasonably argue) that complying with the award will compel it to violate the law. Because there is no such prohibition, one can reasonably conclude that the award is according to law (i.e. not in violation of the law). Moreover, since there is a strong presumption favoring arbitration and the overwhelming weight of authority requires enforcing the award if there is **any rational** basis for doing so, the Court should accept this limited reading of the phrase. *Union de Trajabadores v. Caribbean Gulf Refining*, 680 F. Supp. 469, 470 (D. Puerto Rico 1988)(noting that the reasoning must be so faulty that judge could ever conceivably make such a ruling).

The implicit interpretation the Company advances violates the principle of judicial deference. In essence, the Company argues that if there is any external authority that supports its decision to dismiss an employee, the arbitrator must uphold the discipline. However, this is inconsistent with the principle that a court should not entertain claims that the arbitrator misinterpreted facts or made a legal error. *See*, *Dorado Beach Hotel v. Union de Trajabadores de la Industria Gastronomica de Puerto Rico*, 811 F. Supp. 41, 44 (D. Puerto Rico 1993)(relying in part on *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Indeed, the Company is urging this Court to vacate the award because allegedly the Arbitrator's decision

incorrectly applies legal precedent.  It is precisely this type of argument that the Supreme Court resoundingly rejected in *Misco*. *Id*. at 38.

Even if the Court were inclined to adopt a view that departs from well-established and controlling precedent, the Company's petition does not identify controlling law that the Arbitrator allegedly ignored or misapplied.  The Company only identifies *persuasive* authority.  The Company cites numerous arbitration decisions that support the discipline issued to Mr. Laracuente for his conduct.  However, these decisions are, at best, persuasive authority and were not binding on the Arbitrator.  *El Dorado Technical Services v. Union General de Trajabadores de Puerto Rico*, 961 F. 2d 317, 321 (1st Cir. 1992)(holding that "it is **black letter law** that arbitration awards are not entitled to the precedential effect accorded to judicial decisions.  Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances.")(emphasis added).[4]

Because the Arbitrator was not bound by any of the arbitral decisions the Company cites, the argument that the award is not "according to law" on this basis lacks merit.  The Company's petition does cite a statute and one case from the Puerto Rico Supreme Court.[5]  According to the Company, the statutory provision prohibits capricious, unreasonable and/or unjustified terminations.  Of course, in and of itself, the statute does not determine the issue presented to Arbitrator Ferrer Cruz.  The Company argues that because it had good reasons for terminating Mr. Laracuente, its conduct did not violate the statute.  This argument simply requests the Court

---

[4] Indeed, in *W.R. Grace & Co. v. Rubber Worker's Local 759* 461 U.S. 757 (1983), the Supreme Court held that whether an arbitration award interpreting the **same** contract does not have the same precedential effect as judicial decisions nor are they considered to be conclusive or binding in subsequent arbitration cases involving the same contract language but different incidents or grievances.  *See*, Elkouri & Elkouri, How Arbitration Works, p. 596 (BNA 2003, 6th ed.).

[5] The statutory provision is Act 80 of May 30, 1976, 29 LPRA § 185 which requires just cause to terminate an employee and *Secretario del Trabajo v. ITT* 108 DPR 536 (1979)/

10

to substitute its judgment for the judgment of the Arbitrator. There is nothing in the statute cited by the Company that prohibits the decision reached in this case.

Additionally, the Puerto Rico Supreme Court decision is not binding on a collective bargaining agreement governed under Section 301 of Labor Management Relations Act. Moreover, nothing in this decision prohibits or forecloses the conclusion reached by the Arbitrator in the case at bar. At best, the decision supports the principle that in some instances a first offense is sufficient to warrant termination. However, in this case, the Company apparently conceded that progressive discipline was appropriate because termination was based on prior incidents in conjunction with the November 1996 absences. Thus, the decision by the Puerto Rico Supreme Court does not establish that the Arbitrator violated any provision of Puerto Rico law.

The Court should reject the argument that the award is not "according to law" because (1) there is no law that expressly prohibits implementation of the award, (2) the principle the Company advocates would require the Court to sit as an appellate court and review an award for legal error; a principle, however, that conflicts with well established principles governing judicial review of arbitration awards and (3) there is no binding precedent that required Arbitrator Ferrer Cruz to sustain the dismissal.

      **(b)** **The Arbitrator did not disregard the CBA and administer his own brand of industrial justice. Because the CBA did not enumerate penalties for specific violations nor a limitation on the Arbitrator's authority to review the reasonableness of the discipline issued, he had the authority to modify discipline.**

The Company's next closely related argument is that the Court should vacate the award because the Arbitrator substituted his judgment for the Company's judgment as to appropriate punishment. The Company argues that once the Arbitrator determined that Laracuente's

11

absences were not authorized, he should not have modified the discipline issued. This argument depends on whether the Arbitrator has the authority to modify the punishment if he determines that termination was not justified under the circumstances.

Again, the question turns on whether the contract prohibits the Arbitrator from modifying the discipline issued. There is nothing in the CBA expressly prohibiting the Arbitrator from modifying the discipline. Without such an express limitation on his authority, Arbitrator Ferrer Cruz was empowered to decide not only the question of whether the alleged misconduct occurred but also whether it justified dismissal.

Indeed, this case is practically indistinguishable from *Telemundo of Puerto Rico v. Union de Periodistas*, 1997 WL 170577 (D. Puerto Rico). In *Telemundo*, the Company discharged an employee for insubordination, job abandonment and verbal aggression. At the arbitration, the Company presented evidence that the employee had lied on his application and four instances where he failed to be present at an assignment. The collective bargaining agreement also contained language stating that arbitration decisions "shall be final and binding to the parties, so long as it is pursuant to law." *Id* at *1. The arbitrator found that dismissal was not justified under the circumstance but that a 30 day suspension was appropriate. The arbitrator ordered the grievant reinstated with back pay.

The district court granted the Union's request to enforce the award and denied the Company's request to vacate. After citing the well-established principle that judicial review of an arbitration award is extremely narrow and extraordinarily deferential and that "a reviewing court generally does not hear claims of legal or factual error the way an appellate court reviews a lower court's decisions", the Court noted the following:

12

"The concept of just cause is subject to a variety of interpretations, all of them colored by the facts of a given situation. The Court may not overrule the arbitrator's decision merely because its own interpretation of what constitutes just cause differs from the arbitrator's." *Id*. at *15.

In the case at bar, the Company is asking the Court to substitute its judgment for the judgment of the Arbitrator. The Company's argument is that the Arbitrator should have accepted the discipline it issued and that the Court should intervene on the Company's side because the Arbitrator modified the discipline. However, as argued above, nothing in the agreement compels the Arbitrator to accept the Company's decision even if he finds that some discipline is warranted. The agreement does not enumerate the penalty assigned to specific offenses. In the absence of such an enumeration or other limitation on authority, the Arbitrator can fashion a reasonable penalty, including modification of the discipline issued. *Posadas de Puerto Rico v. Union de Trajabadores de la Industria Gastronomica*, 670 F. Supp. 58, 60 (D. Puerto Rico 1987); *Telemundo*, 1997 WL at * 4 (observing that "where, as here, the CBA does not contain a specific enumeration of which penalties constitute just cause for certain behavior, the arbitrator has the power to modify a penalty that is found to be improper.").

The agreement empowers the arbitrator to decide whether dismissal is justified and this inquiry includes not only a factual determination of whether the alleged conduct occurred but also whether the punishment meted is justified under the circumstances. Such an inquiry is so fact intensive that courts' have rightly avoided interference with the process by according the decision extraordinary deference.

    4.    <u>**The Union is entitled to post award, prejudgment interest on amounts owed**</u>**.**

The Court should award pre-judgment interest from the date of the award and not the date of confirmation. *See, Sun Ship, Inc. v. Matson Navigation Co.*, 785 F. 2d 59, 63 (3d Cir. 1986).

As the Eleventh Circuit noted in *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte*, 141 F. 3d 1434 (11th Cir. 1998), prejudgment interest on an arbitration award should not be viewed as a penalty but rather simply interest on money owed. In *Lewis v. Haskell Co.*, 304 F. Supp. 2d 1347 (M.D. Ala. 2004), the district court was confronted with the question of whether to award interest on an arbitration award dealing with an employment discrimination matter. The district court noted that "under federal law, the prevailing party in FAA arbitration-confirmation proceedings is presumptively entitled to post-award, pre-judgment interest." *Id*. at 1349.

The First Circuit has not decided whether federal law or state law governs an award of interest. In *Fort Hill Builders v. National Grange Mutual Insurance Co.*, 866 F. 2d 11 (1st Cir. 1989), the Panel upheld an award of interest from the date of the arbitration award on the grounds that Rhode Island law provided for such interest. The Panel concluded that under the Federal Arbitration Act, interest is awarded from date of the award and not the date of enforcement or confirmation.

Since both federal and state law provided for the requested remedy, the Panel did not need to decide which law controls in the event of a conflict. The case at bar, however, unequivocally involves federal law. Indeed, under Section 301, federal law displaces the application of state law to cases interpreting collective bargaining agreements. Accordingly, the Court should follow federal law and award interest from the date of the award. Of course, this is a matter that is left to the court's discretion. *See*, *Lewis v. Haskell Co.*, 304 F.Supp.2d at 1349.

**5.      The Court should award the USWA attorney fees.**

The CBA provides that arbitration decisions are final and binding. The Company ignored this commitment when it sued to vacate the award. Additionally, the grounds sought for vacating the award have routinely been rejected. The Company's actions showed an unjustified

obstinacy and thus attorney fees are appropriate under the circumstances. *See*, *Union de Trajabadores v. Union Carbide*, 440 F. Supp. 310 (D. Puerto Rico 1977).

### Conclusion

For the above stated reasons, the USWA respectfully requests that (1) the Court deny El Nuevo Dia's petition to vacate the Laracuente arbitration award and (2) that the Court grant summary judgment on the USWA's counter claim seeking enforcement of the award plus an award of interest from the date of the decision and a reasonable attorney fee. The USWA further requests any equitable or legal relief the Court deems appropriate to effectuate full relief.

Respectfully submitted,

/s/ Richard P. Rouco

OF COUNSEL:
Whatley Drake, LLC
2323 Second Avenue North
Birmingham, AL 35203
205-328-9576
205-328-9669 (fax)

/s/ Richard Schell-Asad
U.S.D.C. – P.R. No. 203207

OF COUNSEL:
Troncoso & Schell
Post Office Box 9023352
San Juan, Puerto Rico 00902-3352
(787) 722-0741
(787) 724-2563 (fax)

**Certificate of Service**

  I certify that on this the ___ day of April, 2004, I served a copy of the forgoing on the following counsel of record:

Pedro J. Manzano-Yates, Esq.
Maria Isabel Rey Cancio, Esq.
Juan Carlos Perez Otero, Esq.
Fiddler, Gonzalez & Rodriquez
P.O. Box 363507
San Juan, Puerto Rico 00936-3507

                _____
                Of Counsel