(Certified Translation)

APPENDIX 23

COMMONWEALTH OF PUERTO RICO

DEPARTMENT OF LABOR AND HUMAN RESOURCES

BUREAU OF CONCILIATION AND ARBITRATION

PRUDENCIO RIVERA MARTINEZ BUILDING

505 MUÑOZ RIVERA AVE.

HATO REY, PR 00918

| | |
|---|---|
| EL NUEVO DIA, INC.,<br>Employer | * ARBITRATION AWARD<br>CASE NO. A-1081-97 |
| and | IN RE: TERMINATION<br>ABANDONMENT OF WORK |
| UNITED STEEL WORKERS OF<br>AMERICA,<br>Union | ARBITRATOR:<br>ANGEL F. FERRER CRUZ |

-----------------------------*

INTRODUCTION

The hearing in the case of reference was held September 10, 1997 at the Bureau of Conciliation and Arbitration, Department of Labor and Human Resources, in

0217-0229

Arbitration Award
Case No. A-1081-97
Page 2

San Juan, Puerto Rico. It was submitted on November 28, 1997, the deadline for the parties to submit written briefs in support of their respective positions.

Appearing on behalf of the employer were José Silva-Cofresí, Esq., legal counsel and spokesman; Mr. Edwin Meléndez, Industrial Relations manager; and Mr. Angel L. Reyes, chief of the Subscriptions Department and witness.

Appearing on behalf of the Union were Mr. Miguel Rodríguez, business agent and spokesman; Héctor Vázquez, president; José Laracuente, grievant and witness, and Ms. Norma Díaz, the latter's wife.

## SUBMISSION

The parties did not reach a submission agreement, despite the fact that the proposals were quite similar.

In accordance with the Regulations of the Bureau of Conciliation and Arbitration, we determined that the issue to be resolved is as follows:

Determine, in accordance with law, whether or not grievant's termination was justified. If not justified, provide the adequate remedy.

Arbitration Award
Case No. A-1081-97
Page 3

OPINION

Mr. José L. Laracuente, the grievant, was an employee of El Nuevo Día newspaper, where he worked as the district manager of the Circulation Department. He worked for said company from July 1993 through November 29, 1996, when he was suspended indefinitely. The suspension was subsequently modified to a termination.

Grievant was charged with abandonment of work for failure to present evidence for his absence.

To support the termination, the employer presented the testimony of Mr. Angel Reyes, whose duties included administration and hiring.

According to his testimony, on Thursday, November 14, 1996, at about 2 p.m., he received a call from the grievant informing him that his supervisor, named Fonseca, had not given him permission to leave on an emergency trip to Florida in the United States. In view of said request he asked him what the emergency was, and Laracuente informed him that it was to complete the procedure to purchase some land. He responded that that was not a just reason, to find other means such as having the documents sent by fax or to travel on Sunday. Grievant indicated

0217-0229

Arbitration Award
Case No. A-1081-97
Page 4

that he agreed to call him back but never did. On Friday, November 15, 1996, grievant left for the trip. That day, the 15th, was the beginning of collections for the newspaper and that grievant was the one who knew the carriers and the billing problems, and therefore his absence represented monetary losses "of approximately 500-some-odd dollars."

He testified that grievant reported [to work] without prior notice on Thursday, November 21, 1996, in the 4 p.m. shift. That he summoned him to report to his office the next day, Friday the 22nd. That day he asked him for an explanation as to his absence and he reiterated that he had to make that trip, because if not he would lose money. He (Reyes) then gave him a reasonable time period to present evidence as to the reason for his absence.

That on November 29, 1996, the grievant had agreed to take some evidence, which he did not take, and therefore he was suspended indefinitely. The evidence he was expecting was something to show that it was really an emergency. Again he was given time, until December 5, 1996, to obtain the evidence. On December 5th he still did not have it, so he proceeded to terminate him.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 5

He testified that on December 11, 1996, grievant went to his office with Mr. Héctor Vázquez. They presented some letters to him to show that grievant had been in the United States taking some steps in connection with the sale of some property. That he responded that said letters were not what he was expecting, but rather, the reason for abandoning his work. He proceeded to conduct an investigation. He made calls to the place where grievant was supposed to have been and they sent him a letter confirming that grievant had been in the offices of Full Service Mortgage on November 19, 1996.

He added that grievant was not a good employee. He presented two written admonishments, one dated August 2, 1994 and the other dated December 6, 1995. The first one charged him with abandoning his work area and the second one with being absent on the days after he had had differences with his supervisors.

He concluded his testimony by saying that he had told grievant that he would not authorize him to take the trip.

On its part, the union presented the testimony of the grievant to support its position to the effect that the termination was not justified.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 6

    Laracuente testified, among other things, that on Tuesday, November 12, 1996 he asked Supervisors Fonseca and Falcón for authorization to travel and that the next day he spoke to Fonseca to follow up on his request. That it was on the morning of Thursday, November 4, 1996 (sic) when Fonseca finally denied the authorization to travel. Therefore, he proceeded to contact Mr. Reyes that same day. He [Reyes] gave him the alternative of sending the document by fax or traveling on Sunday. He told him that he could not send the document by fax and that he would call him back to see if he could make other arrangements.

    Regarding Supervisor Reyes' allegation to the effect that the newspaper had lost money, Laracuente testified that on November 15, 1996, before he was absent, he met with Supervisor Fonseca at 6 a.m. and gave him a report so that the work could be performed in his absence. That Fonseca asked him to give him the radio. That he asked him whether he was firing him, to which he responded no because he (Laracuente) had Mr. Reyes' authorization. He claimed that he had not abandoned his work because he felt that he was taking the trip with the authorization of the management, although not Fonseca's. That he [Fonseca]

Arbitration Award
Case No. A-1081-97
Page 7

told him: "I am not authorizing anything, but Mr. Reyes told me that you had to take that trip because it was an emergency."

He indicated that he was only absent two and one-half days; to wit, Saturday the 16th, Wednesday the 20th and the morning of Thursday, November 21, 1996. That Sunday the 17th and Monday the 18th were his days off and Tuesday the 19th was a holiday.

That he reported to work on Thursday, November 21, 1996. That day he was summoned to Mr. Reyes' office where he waited from 4 to 8 p.m., but was not attended. He was informed to report to work the next day as usual. That on Friday, November 22, 1996 he reported to work at 5 a.m. and he was given his radio and other work materials. That same day Supervisor Fonseca told him to report to Mr. Reyes' office again during his afternoon shift. He stated that in said meeting nothing was discussed regarding absences or disciplinary measures, that the only thing discussed was a report wherein irregularities would be discussed. That on November 23, 1996, Reyes asked him, informally, to present a document to the effect that he had been in Florida.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 8

He testified that after said meeting, he worked all week as usual; the 24th and 25th were his days off, he worked on the 26th and the 27th, the 28th, Thanksgiving, was a day off. On the 29th he worked in the morning and in the afternoon he was again called into a meeting. Reyes then asked him for evidence that he had been in Orlando, Florida.

That he presented a purchase contract which was not accepted as evidence because it was dated June 1996, and he proceeded to suspend him indefinitely.

At that time Mr. Vázquez, president of the local, intervened and asked Reyes what evidence he required to which Reyes responded: [Something] that shows that he was in Florida for the purpose he says. That Reyes told him that if they brought the evidence he would reinstate him in his job and pay him the wages he had lost.

He indicated that on November 29, 1996, the F.S. Mortgage company sent a letter from Orlando, Florida, to El Nuevo Día confirming that grievant had been there completing the steps to purchase a lot.[1]

---

[1] This information was corroborated through a letter of December 6, 1996 from Mr. Edgardo Alvelo, realtor, who indicated that Laracuente's presence was important in that had he not gone

Arbitration Award
Case No. A-1081-97
Page 9

Laracuente testified that on that same weekend a coworker named José Santana, who was a district manager in the same region as his, traveled to Miami. Said coworker was not sanctioned or suspended, despite the fact that he went for a wedding.

He concluded his testimony by saying that regarding his record as an employee he had received several acknowledgments for outstanding work and that he had responded in writing to the admonishments he had received, although he did not resort to arbitration.

We must determine, in light of the evidence presented and the collective bargaining agreement, whether or not grievant's termination was justified.

Grievant was suspended on November 29, 1996, by means of a letter whereby he was told the following:

> "Effective today you are suspended from work and wages indefinitely.
>
> We made this decision on the basis that it is our understanding that you abandoned your work, given that you did not present the evidence

---

he would lose the deposit (Employer's Exhibit 3.)

Arbitration Award
Case No. A-1081-97
Page 10

for said absence.

Should you have any doubt in this regard, please contact us."

On December 5, 1996, he was terminated. He was told the following:

"Despite having been given the opportunity to present evidence as to why you were absent, to date you have not presented it.

Therefore, you are permanently separated from work, effective today, December 5, 1996, in that it is our understanding that you abandoned your work."

According to these two letters, grievant was terminated for abandonment of work, after being given the opportunity to present evidence as to why he had been absent.

The evidence presented reflected that grievant asked his supervisor, Fonseca, for the authorization to be absent and go to Orlando, Florida, to take some steps regarding the purchase of some property. He denied said request, and then grievant resorted to Supervisor Reyes, who was at a higher level of hierarchy.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 11

There are opposing positions regarding whether or not Supervisor Reyes authorized the grievant. Reyes testified that he did not authorize him and that he suggested other alternatives, such as sending the documents by fax or traveling on another day. That grievant had agreed to call him back, which he did not do.

On his part, grievant indicated that in that the alternatives offered by Reyes were not viable, he had the need to take the trip. He added that Supervisor Fonseca's statements led him to believe that Reyes had authorized him.

Both witnesses agreed that grievant had agreed to call Reyes back. This leads us to believe that in the conversation grievant had with Reyes there was no authorization for the absence. We are of the opinion that if Reyes had authorized him then there would have been no need for grievant's second call.

Regarding Laracuente's allegation to the effect that Fonseca told him that Reyes had authorized him, although possible, we are not convinced; and if true, we feel that Laracuente should have contacted Reyes to inquire as to the authorization.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 12

Based on the above, our conclusion is that the grievant in effect engaged in an unauthorized absence. However, we are not convinced by employer's allegation to the effect that the offense committed entails termination. Our duty is precisely to adjudicate whether or not the termination was justified. We feel that it was not. Let us see.

We understand that Supervisor Reyes' insistence, once grievant reported to work, to the effect that he present evidence to justify his absences, was aimed at corroborating the veracity of his version to the effect that he was out of the country taking steps to buy some land and to the effect that his presence in Florida was indispensable or necessary.

The evidence presented indubitably reflected that Laracuente always told the truth as to the reason which, in his judgment, justified his absence.

Employer's Exhibit 3 further exhibited that grievant's presence in Florida was really important and essential, in that if he did not go he would lose the money he had deposited. This in and of itself resulted in the justification that Supervisor Reyes required.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 13

Regarding the supervisor's statement to the effect that Laracuente's absence caused a loss of 500-some-odd dollars, no supporting evidence was provided, wherefor it remained a mere allegation. This version was also refuted by the grievant when he testified that in the meeting held on November 15, 1996 with Supervisor Fonseca, he gave him a report so that the work could be performed during his absence.

Additionally, as part of its evidence the employer presented grievant's disciplinary history as an aggravating factor to justify his termination. Said evidence reflected that on two occasions grievant had been admonished in writing. The first time on August 2, 1994, whereby he was admonished for being disrespectful and abandoning his work area. The second time on December 6, 1995 for being absent after having differences with his supervisors.

The union, on its part, presented evidence tending to show that grievant had a good record. Among them, certificates for "being part of the most outstanding region" in July and September 1993, and March and July 1995. It further presented a letter dated September 13,

Arbitration Award
Case No. A-1081-97
Page 14

1996 which expresses acknowledgement for his efforts during the emergency of Hurricane Hortense, which states, among other things: "I do not want to overlook the sacrifice you had to make to help us distribute the newspaper, in that leaving your family is no easy task. I am very proud that you are part of our team."

Regarding the importance of the employee's record, authors Frank and Edna Elkouri state the following in their book <u>How Arbitration Works</u>:

> "Some consideration generally is given to the past record of any disciplined or discharged employee. An offense may be mitigated by a good past record and may be aggravated by a poor one. Indeed, the employee's past record often is a major factor in the determination of the proper penalty for the offense."

Evaluating the totality of grievant's record, we must conclude that the two prior admonishments vis-à-vis the acknowledgements he was given do not tend to tip the scale such that would justify the termination.

Lastly, we cannot lose from perspective the fact that

0217-0229

Case 3:98-cv-01546-JP   Document 22-3   Filed 04/30/2004   Page 15 of 18

Arbitration Award
Case No. A-1081-97
Page 15

a termination is the most severe sanction an employer can impose on an employee in that the employee is deprived of the opportunity to earn a living for him/herself and his/her family. He/she is further deprived of other contractual benefits, in that on occasion misgivings are cast as to the reputation and worth of the worker, which could make his/her opportunities for reemployment more difficult. In addition to this situation, it has been and continues to be a generally accepted rule in the arbitration forum to hold the employer responsible for proving to the arbitrator that the termination imposed upon the employee was justified.[2]

In the field of labor law, there is ample support for the arbitration principle that holds the employer responsible for proving the just cause on which the employer grounds and bases the disciplinary action imposed.[3] It is also necessary for the employer to prove the existence of an adequate proportion between the disciplinary sanction and the penalty or punishment

---

[2] See Act No. 80 of May 30, 1976.

[3] See the following cases: 55 LA 435, 437; 54 LAI, 10; 52 LA 1164, 1166; inter alias.

0217-0229

Arbitration Award
Case No. A-1081-97
Page 16

imposed.  See <u>Arcelay Rivera v. Superintendente de la Policía</u>, 95 DPR 211 (1967).

Regarding just cause for the termination, the former Secretary of Labor's opinions regarding labor protection legislation (Opinion 91-3) state, among others:

> "In a society like ours where to lose a job is an important event in the life of a worker, with serious and detrimental consequences for him and his family, compliance with the legislation that requires termination of employees for just cause is of an unquestionable social value.
>
> "Public policy on employment in Puerto Rico is directed at discouraging unjustified terminations of employees. For that reason, the employer, except in the case of employees in probationary periods, has to show that there was just cause to terminate an employee to then be free of liability for said termination.  The termination of an employee is always valid if it is for just

0217-0229

Arbitration Award
Case No. A-1081-97
Page 17

cause."

In conclusion, we acknowledge the offense committed by Grievant Laracuente, but we disagree with the sanction imposed.

In accordance with the statements hereinabove, we issue the following:

### A W A R D

Grievant's termination was not justified. It is modified to a suspension of ninety (90) business days. Reinstatement of the grievant is ordered and back pay for all lost wages. Except, of course, that pertaining to the 90 days of suspension.

Issued in Hato Rey, Puerto Rico, on this 18th day of March, 1998.

(Sgd.: Illegible)
ANGEL F. FERRER CRUZ
Arbitrator

### CERTIFICATION

Filed in the case record on this 18th day of March, 1998; and a copy has been mailed to the following:

0217-0229

Arbitration Award
Case No. A-1081-97
Page 18

    Mr. Miguel Rodríguez
    United Steelworkers of America
    Box 6828, Santa Rosa Unit
    Bayamón, PR   00960-9088

    Mr. José Mercado
    El Día, Inc.
    Box 297
    San Juan, PR   00902

    Jorge Pizarro, Esq.
    Box 191732
    San Juan, PR   00919-1732

    José Silva Cofresí, Esq.
    P O Box 363507
    San Juan, Puerto Rico   00936-3507

                                    (Sgd.: Lourdes Del Valle)

                                      LOURDES DEL VALLE

                                          Secretary

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
      - CERTIFIED -
to be a correct translation
     prepared by

_____ 5/14/98
     Edie Núñez
Certified Court Interpreter
  Administrative Office
of the United States Courts

                                                             0217-0229